**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000435
22-AUG-2012
08:50 AM**

NO. CAAP-11-0000435

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I,
Plaintiff-Appellee,
v.
MARIA HOCOG RAMANGMOU,
Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-CRIMINAL NO. 09-1-0473)


MEMORANDUM OPINION
(By:  Foley, Presiding J. and Reifurth, J.;
Ginoza, J. dissenting)

Defendant-Appellant Maria Ramangmou (Ramangmou) appeals from the Judgment of Conviction and Probation Sentence entered May 3, 2011 in the Circuit Court of the Third Circuit[1] (circuit court).  Ramangmou was found guilty of Abuse of Family or Household Member, in violation of Hawaii Revised Statutes (HRS) § 709-906(1) (Supp. 2011).[2]

---

[1] The Honorable Glenn S. Hara presided.

[2] HRS § 709-906 provides, in pertinent part:

§709-906  **Abuse of family or household members; penalty.**
(1)  It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member[.]

On appeal, Ramangmou contends:

(1)    There was insufficient evidence to negate her parental discipline defense beyond a reasonable doubt.

(2)    The State of Hawai'i (the State) committed prosecutorial misconduct by misstating the law on the parental discipline defense.

(3)    The State committed prosecutorial misconduct by telling the jury that Ramangmou's grandchildren had been removed from her home by Child Welfare Services.

(4)    She was denied the effective assistance of counsel at trial.

## I.    BACKGROUND

On October 30, 2009, the State charged Ramangmou with one count of Abuse of Family or Household Member, pursuant to HRS § 709-906(1).  A jury trial was held on March 15 and 16, 2011, at the conclusion of which the jury found Ramangmou guilty as charged.  On May 3, 2011, the circuit court entered a judgment of conviction, sentencing Ramangmou to probation for two years, and special conditions including incarceration for six months "with all but thirty days stayed on condition of compliance with the terms and conditions of probation."  On May 31, 2011, Ramangmou timely filed a notice of appeal from the judgment of conviction.

## II.    STANDARDS OF REVIEW

### A.    Sufficiency of the Evidence

The appellate court reviews the sufficiency of evidence on appeal as follows:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury.  The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (quoting State v. Quitog, 85 Hawai'i 128, 145, 938 P.2d 559, 576

2

(1997)). "'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Richie, 88 Hawai'i at 33, 960 P.2d at 1241 (internal quotation marks and citation omitted).

## III. DISCUSSION

The critical issue on appeal is whether there was substantial evidence presented by the State to support Ramangmou's conviction. Viewing the evidence in the light most favorable to the prosecution, we conclude there was insufficient evidence to disprove Ramangmou's parental discipline defense.

Ramangmou admitted at trial that she hit Minor, age thirteen, with a guava stick, described as approximately three feet long and the width of a "G2" gel roller pen. Minor indicated Ramangmou also hit her with a wire after the guava stick broke. Ramangmou argues that her use of force was justified under the parental discipline defense as set forth in HRS § 703-309 (Supp. 2011). HRS § 703-309 provides, in pertinent part:

> §703-309 **Use of force by persons with special responsibility for care, discipline, or safety of others.** The use of force upon or toward the person of another is justifiable under the following circumstances:
>
> (1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor, or a person acting at the request of the parent, guardian, or other responsible person, and:
>
> > (a) The force is employed with due regard for the age and size of the minor and is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct; and
> >
> > (b) The force used is not designed to cause or known to create a risk of causing substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage.

"The basic conception of the parental justification defense is to allow a person responsible for a child's welfare to

3

use reasonable force to discipline that child." State v. Matavale, 115 Hawai'i 149, 168, 166 P.3d 322, 341 (emphasis omitted). To invoke the defense, a defendant bears "the initial burden of production with respect to the facts necessary to put the parental discipline defense at issue." State v. Stocker, 90 Hawai'i 85, 95, 976 P.2d 399, 409 (1999). Ramangmou met her burden of production.

The burden then shifted to the State to "disprov[e] beyond a reasonable doubt the justification evidence that was adduced, or [to] prov[e] beyond a reasonable doubt facts negativing the justification defense." State v. Crouser, 81 Hawai'i 5, 11, 911 P.2d 725, 731 (1996). To defeat Ramangmou's justification defense, the State was required to show that one of the following circumstances was not met:

(1)     Ramangmou was a guardian responsible for the general care and supervision of Minor against whom she used force;

(2)     Ramangmou's use of force was with due regard to the age and size of Minor and was reasonably related to the purpose of safeguarding or promoting the welfare of Minor, including the prevention or punishment of Minor's misconduct; or

(3)     the force used was not designed to cause, or known to create the risk of causing, substantial bodily injury,[3]

---

[3]     HRS § 707-700 (Supp. 2011) provides, in relevant part:

"Substantial bodily injury" means bodily injury which causes:

(1)     A major avulsion, laceration, or penetration of the skin;

(2)     A burn of at least second degree severity;

(3)     A bone fracture;

(4)     A serious concussion; or

(5)     A tearing, rupture, or corrosive damage to the esophagus, viscera, or other internal organs.

disfigurement, extreme pain or mental distress,[4] or neurological damage.

Id. at 10-11, 911 P.2d at 730-31; HRS § 703-309(1).

There is no dispute that the first element of the justification defense was met. Ramangmou is Minor's grandmother and had been her legal guardian since 2002, when the court gave Ramangmou custody of Minor and her four siblings. There is also no dispute that Ramangmou used force against Minor when she hit her with a guava stick. Minor and her brother both testified to Ramangmou's use of a wire.

The dispute arises in regards to whether the second or third elements of the justification defense were disproved or negated by the State. Under the second element of the justification defense, Ramangmou's use of force must have been "with due regard to the age and size of [Minor] and reasonably related to the purpose of safeguarding or promoting the welfare of [Minor], including the prevention or punishment of [Minor's] misconduct[.]" Crouser, 81 Hawai'i at 10-11, 911 P.2d at 730-31. "[T]he fact that the use of force may have arisen out of anger or short temper[] does not automatically mean that such force was not reasonably related to the purpose of safeguarding or promoting the welfare of the minor, or for the prevention or punishment of misconduct." State v. Kikuta, 125 Hawai'i 78, 91, 253 P.3d 639, 652 (2011).

The justification defense is defeated under the third element of the defense if the State shows the force was "designed to cause, or known to create the risk of causing, substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage." HRS § 703-309(1)(b).

---

[4] The word "extreme" modifies both "pain" and "mental distress," such that the force used may not be designed to cause, or known to create the risk of causing "extreme pain" or "extreme mental distress." See State v. Dowling, 125 Hawai'i 406, 411-12, 263 P.3d 116, 121-22 (App. 2011).

The reasonableness of force turns on the totality of the facts and circumstances of the case. Matavale, 115 Hawai'i at 165, 166 P.3d at 338.

> In determining whether force is reasonable, the fact finder must consider the child's age, the child's stature, and the nature of the injuries inflicted, i.e., whether the force used was designed to cause or known to create a risk of causing substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage given the child's age and size. . . . [T]he permissible degree of force will vary according to the child's physique and age, the misconduct of the child, the nature of the discipline, and all the surrounding circumstances. It necessarily follows that the question of reasonableness or excessiveness of physical punishment given a child by a parent is determined on a case-by-case basis and is dependent upon the particular circumstances of the case.

Id. at 164-165, 166 P.3d at 337-338 (emphasis omitted).

Hawai'i case law provides guidance as to the type of conduct that falls inside or outside the parameters of parental discipline. Matavale, 115 Hawai'i at 165, 166 P.3d at 338.

Cases in which the conduct fell outside the bounds of parental discipline are as follows:

In Crouser, the force used by mother's boyfriend (defendant) exceeded the permissible level. Crouser, 81 Hawai'i 5, 911 P.2d 725. In response to disobedience and lying by the fourteen-year-old complainant, the defendant called the girl a liar, hit her across the face, knocked her to the floor and as she got up, threw her face-down on to the bed. Id. at 8, 911 P.2d at 728. At that point, defendant pulled complainant's pants and underwear down and began to hit her buttocks. Id. Defendant left the room, only to return with a plastic bat and proceeded to hit complainant on her buttocks, arm, thighs, and torso for approximately thirty minutes, until the bat broke. Id. Complainant testified that she felt dizzy for the next hour or so, and that at school the next day, she could not sit down except on a padded chair because of the pain. Id. She said her bottom hurt for a couple of weeks. Id. The school health aide

examined her at school the day after the incident and saw that complainant's buttocks were bruised and deep reddish-purple in color. Id. at 9, 911 P.2d at 729. Considering, among other things, the complainant's age and size relative to defendant's; the excessive force causing her to be unable to sit; and the nature of her injuries, the Hawai'i Supreme Court concluded that the force used by defendant was not reasonably related to protecting the complainant's welfare. Id. at 12, 911 P.2d at 732. The supreme court also concluded that the force used by defendant exceeded the justifiable level of discipline by causing "extreme pain" that was comparable in degree to other statutorily forbidden results. Id. at 13, 911 P.2d at 733.

In State v. Tanielu, 82 Hawai'i 373, 922 P.2d 986 (App. 1996), this court agreed with the family court's rejection of the parental discipline defense when a father punched, slapped, and kicked his fourteen-year-old daughter in the shins and face and pulled her ears in response to her lies and refusal to stop seeing her boyfriend. Id. at 377, 922 P.2d at 990. We agreed with the family court that the viciousness of the attack "severed any relationship between the use of force and the welfare of Daughter which might be considered 'reasonable'." Id. at 381, 922 P.2d at 994; see also State v. Miller, 105 Hawai'i 394, 98 P.3d 265 (App. 2004) (holding that punching the face and kicking the ribs of eleven-year-old complainant, along with evidence of bleeding on the head and scratches on face and ears, was not reasonably related to the purpose of safeguarding or promoting the welfare of complainant nor was it reasonably proportional to the misconduct being punished).

In State v. Kiese, 126 Hawai'i 494, 273 P.3d 1180 (2012), the State successfully disproved defendant's parental justification defense when defendant employed force without due regard for the age and size of the minor. In this case, defendant slapped his six-year-old son on the face and hit him

7

several times on the buttocks with a bamboo stick, "causing [son] to feel pain and to cry, and leaving visible red welts a day after the incident." The evidence indicated the boy "was a thin, slight, boy, no more than four feet tall, and that [defendant] was much larger." Id. at 505, 273 P.3d at 1191.

Cases in which the conduct of the defendants fell within the parameters of parental discipline are as follows:

In Stocker, the Hawaiʻi Supreme Court concluded that the defendant's single slap with an open hand on his eleven-year-old son's face in response to the boy's refusal to come to him was not "an unreasonable, excessive, or disproportionate use of force." Stocker, 90 Hawaiʻi at 88, 96, 976 P.2d at 402, 410. The son said the slap "only hurt a little" and "left no mark or bruise." Id. This case represented "the use of mild force" permissible under the parental discipline statute. See Matavale, 115 Hawaiʻi at 168, 166 P.3d at 341.

In Matavale, the defendant mother hit her fourteen-year-old daughter with several objects, including a backpack, a plastic hanger, the flat side of a hairbrush, and the plastic handle of a metal tool for lying about a report card and misleading the mother about the daughter's attendance at tutoring. Matavale, 115 Hawaiʻi at 178, 166 P.3d at 351. The daughter described the mother as being taller, heavier, and stronger, but testified that the force employed by the mother "was not hard and only caused her temporary pain[.]" Id. at 168, 166 P.3d at 341. The mother acknowledged "that she lost control" when she started hitting her daughter. Id. at 178, 166 P.3d at 351. The supreme court held that the mother's conduct fell within the parameters of the justified parental discipline statute, stating that the court could not "perceive how the force employed by Mother . . . could somehow have the potential of creating 'substantial bodily injury,'" as defined under HRS § 707-700. Matavale, 115 Hawaiʻi at 168, 166 P.3d at 341.

In State v. Roman, 119 Hawai'i 468, 199 P.3d 57 (2008), defendant kicked his girlfriend's seventeen-year-old son (complainant) in the back a couple of times and hit him on the face with his hand a couple of times after the boy failed to grate cheese as defendant had requested. Id. at 470, 199 P.3d at 59. Complainant testified that he was "[a] little sore" where he had been hit and that the mark on his face was "a lump and was red." Id. The supreme court concluded that the defendant's conduct "was reasonably proportionate to the [complainant's] defiant behavior" and "was reasonably believed to be necessary to discipline [complainant] for his attitude and demeanor." Id. at 481, 199 P.3d 57, 70. The court also concluded that "the degree of force used was 'not designed to cause or known to create a substantial risk of causing bodily injury, disfigurement, extreme pain or mental distress, or neurological damage.'" Id.

In Dowling, this court concluded that the State had failed to disprove defendant's parental discipline defense when, in response to his eleven-year-old son lie about jamming the rug under the closet door, defendant pushed the boy on the shoulder and hit him twice on the leg, which caused bruising that the boy showed his grandmother five days later. Id. at 408, 263 P.3d at 118.

This court determined that

[a]lthough Dowling's punches were forceful enough to cause bruising, they were not forceful enough to rise to the level of viciousness in Miller, in which the level of attack "severed any relationship between the use of force and the welfare" of the complaining witness that "might be considered reasonable." 105 Hawai'i at 402, 98 P.3d at 273. It is at most a "gray area" in which some of the community would find that Dowling's extent of punishment was inappropriate. However, under Matavale, such gray areas are not resolved by criminalizing such parental discipline. Therefore, there was insufficient evidence to disprove Dowling's parental discipline defense under HRS § 703-309(1)(a).

Id. at 414, 263 P.3d at 124.

"[T]he line between physical abuse and appropriate parental discipline is a very subjective one. What one parent

considers discipline may seem abusive to another." Kikuta, 125 Hawaiʻi at 81, 253 P.3d at 642 (quoting Matavale, 115 Hawaiʻi at 161, 166 P.3d at 334) (citation and internal quotation marks omitted). The Hawaiʻi Supreme Court has favorably noted the recognition by other courts "that, although corporal discipline may be considered excessive when it results in significant bruises or welts, 'bruises are not necessarily indicative of excessive corporal discipline.'" Matavale, 115 Hawaiʻi at 166, 166 P.3d at 339 (quoting T.G. v. Dep't of Children & Families, 927 So.2d 104, 106 (Fla. Dist. Ct. App. 2006)).

The supreme court has also stated:

As other courts have recently expressed and we agree,

> an isolated instance of moderate or reasonable physical force . . . *that results in nothing more than transient pain or temporary marks or bruises is protected under the parental discipline privilege.*
>
> *This protection for parents should exist even if the parent acts out of frustration or short temper. Parents do not always act with calmness of mind or considered judgment when upset with, or concerned about, their children's behavior. Nor do parents always act pursuant to a clearly defined circumstance of discipline or control.* A reaction often occurs from behavior a parent deems inappropriate that irritates or angers the parent, causing a reactive, demonstrative act. Heat of the moment must not result in immoderate physical force and must be managed; however, *an angry moment driving moderate or reasonable discipline is often part and parcel of the real world of parenting with which prosecutors and courts should not interfere.* What parent among us can say he or she has not been angered to some degree from a child's defiant, impudent, or insolent conduct, sufficient to call for spontaneous, stern, and meaningful discipline?

Matavale, 115 Hawaiʻi at 166, 166 P.3d at 339 (emphases in original).

Ramangmou described Minor as giving her "a lot of trouble by not listening to what I ask her to do or say to her" and that problems with Minor's behavior began when Minor was in fifth grade. Ramangmou related an incident in which Minor had taken over a thousand dollars from the house and handed the money out to friends at school. Minor had also taken Ramangmou's

jewelry without permission and given it out at school.  Ramangmou spoke to the teachers at school in hopes of getting some help in correcting Minor's behavior.

Ramangmou also had problems with Minor not catching the bus after school and not coming home when she was supposed to. One time, Minor stayed away the entire weekend and Ramangmou did not know where she was.  When Ramangmou received a "very, uh, big" cell phone bill, she confronted Minor, who, according to Ramangmou, admitted to taking the phone and claimed she gave it to a friend at school.  Ramangmou asked Minor to get the phone back, but the next day after school, Minor said her friend had moved to Hilo and did not have the phone.  In response to the question, "[D]id you and [Minor] have an argument about the phone?", Ramangmou replied "I spanked [Minor] because she was lying to me about the phone."[5]  The following exchange then took place with defense counsel:

> [Defense Counsel]: Did you believe it was necessary to discipline [Minor] due to her stealing and lying?
>
> [Ramangmou] (Interpreted): Yes, because I really love my grandchildren and I wanted to make sure that, you know, she doesn't do this anymore, but she just refuses to listen to my advice and counsel.

In response to further questions about the general behavior of Minor, Ramangmou expressed concern about how Minor dressed and generally "was worried about [Minor] getting pregnant or getting in a problem.  [Minor] has no parents herself, and I worry about the consequences of her behavior."  Ramangmou testified that normally she would just talk and advise Minor, but that Minor "refuses to listen."

---

[5]  Minor testified that she did not take Ramangmou's telephone, that she had nothing to do with the missing telephone, and that she did not know who took the telephone.  Minor's testimony, although inconsistent with, does not explicitly contradict Ramangmou's testimony.  Nevertheless, Ramangmou testified that her decision to discipline Minor was based on multiple factors, only one of which was the telephone.  Even though we view the evidence in the light most favorable to the prosecution, under the circumstances, and contrary to the State's claim, Minor's testimony on the telephone issue does not mean that the defense of justification does not apply.

Ramangmou explained that she spanked Minor in an attempt to correct Minor's wrong behavior. Ramangmou stated that on the day of the incident, she intended to spank Minor on her buttocks. Ramangmou used a guava stick no thicker than a gel roller pen, a stick that quickly broke. She then used a wire of unspecified description, but because Minor kept moving around and running away, some of the hits landed on Minor's arms, shoulder, and back. Minor testified, and photos indicated, that she had bruises on her arms, elbows, shoulder, back, and ankle as a result of the incident. Minor also testified she had a scar on her back from being hit with either the guava stick or wire. She said the bruises were caused by Ramangmou but acknowledged that she kept moving around because "it hurt when [Ramangmou] was hitting me."

Because Minor kept moving, Ramangmou instructed Minor's brothers to help keep her still. The brothers pulled her out from under the bed and from under the table and held her down by her arms and legs. It is unknown whether their efforts contributed to the bruising. The bruising and the cut from the wire did not cause substantial bodily injury or disfigurement. Minor testified that being hit hurt and that she felt pain, but she did not testify to extreme pain or extreme mental distress. Evidence showed that Minor sustained bruising and a cut on her back, but there was no testimony as to the duration of the bruising or that she had to seek medical help.

Given our case law, the totality of the circumstances in this case leads us to conclude that the State failed to disprove beyond a reasonable doubt Ramangmou's parental discipline defense under HRS § 703-309(1). The force used was "with due regard for the age and size of the minor and [was] reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct[.]" See HRS 703-309(1)(a).

Furthermore, "[t]he force used [was] not designed to cause or known to create a risk of causing substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage." See HRS 703-309(1)(b). The State failed to adduce sufficient evidence to rebut Ramangmou's justification defense.

## IV. CONCLUSION

The Judgment of Conviction and Probation Sentence entered May 3, 2011 in the Circuit Court of the Third Circuit is reversed. Ramangmou's other points on appeal are moot.

DATED: Honolulu, Hawai'i, August 22, 2012.

On the briefs:

Randall M. Oyama
for Defendant-Appellant.

Presiding Judge

Jefferson R. Malate
Deputy Prosecuting Attorney
County of Hawai'i
for Plaintiff-Appellee.

Associate Judge